UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

------------------------------------------------------
                                            :
DONNA MOORADIAN, ET AL.                     :        CASE NO. 1:17-cv-1132
                                            :
            Plaintiffs,                     :
                                            :
vs.                                         :        OPINION & ORDER
                                            :        [Resolving Doc. No. 30]
FCA US, LLC,                                :
                                            :
            Defendant.                      :
                                            :
------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Plaintiffs make claims that allege a manufacturing defect in 2012-2017 Jeep Wranglers.[1]
Defendant FCA US, LLC ("FCA") moves to dismiss Plaintiffs Donna and William Mooradian's
and Plaintiff Joseph White's (collectively, "Plaintiffs") complaint for failure to state a claim.[2]

For the reasons below, the Court **GRANTS IN PART and DENIES IN PART**
Defendant's motion to dismiss.

## I. Background

### A. The Manufacturing Process and Alleged Defect

Defendant FCA US, LLC manufactures Jeep Wranglers.[3] When making the Wranglers'
engines, FCA uses a sand-casting method to create some engine components and a die-casting
method to create others. This sand-casting method "utilizes expendable sand molds to form
complex metal parts from alloys."[4]

---

[1] Doc. 18 (amended complaint).
[2] Doc. 30. Plaintiffs oppose. Doc. 32. Defendant replies. Doc. 35.
[3] In deciding a motion to dismiss for failure to state a claim, the Court assumes the facts alleged in the complaint are true. The Court therefore presents Plaintiffs' version of the facts here. *See Ohio Police & Fire Pension Fund v. Standard & Poor's Fin. Servs. LLC*, 700 F.3d 829, 835 (6th Cir. 2012).
[4] Doc. 18 at 4.

When manufacturing 2012-2017 Wranglers, FCA used a die-casting method to create the Wranglers' engine blocks, but used a sand-casting method to make the engine's cylinder head.[5] Any excess sand from this sand-casting method must be purged from the cylinder head, or it will gradually seep into other engine component parts.[6]

Specifically, excess sand can "improperly circulate through the vehicle's cooling system and settle in the heater core, radiator, and oil cooling systems."[7] Eventually, this excess sand forms a sludge in the bottom of the radiator reservoir that can cause the vehicle's heating and cooling systems to malfunction and fail.[8] This makes driving in extreme heat or cold potentially dangerous or impossible.[9]

Plaintiffs allege that sand begins to shed from the engine cylinder head as soon as someone drives the vehicle, but this issue is only discovered once the heating and cooling systems fail. Moreover, normal maintenance, such as an engine flush, does not fix this problem.[10] This is because the sand-based sludge builds up at the bottom of the radiator, which an engine flush does not reach.[11] Additionally, sand continues to build up in the engine once the vehicle operates again.[12]

Plaintiffs allege that Defendants' failure to adequately clean cylinder heads created a manufacturing defect in 2012-2017 Jeep Wranglers.

FCA provides two relevant express warranties that cover 2012-2017 Jeep Wranglers. The 3-year/36,000 mile "Basic Limited Warranty" "covers the cost of all parts and labor needed to

---

[5] *Id.*
[6] *Id.*
[7] *Id.*
[8] *Id.*
[9] *Id.* at 5.
[10] *Id.*
[11] *Id.*
[12] *Id.*

repair any item" on the vehicle except "tires and Unwired [sic] headphones."[13]  The 5-year/100,000 mile "Powertrain Limited Warranty" "covers the cost of all parts and labor needed to repair" a limited number of parts, including the engine cylinder head assemblies.[14]

**B. The Mooradians**

In July 2013, the Mooradians leased a new 2013 Jeep Wrangler Unlimited from an authorized Jeep dealer.[15] In October 2016, the heat in the Mooradians' Jeep only blew cold air from the vents, even though it was on the highest setting. The defroster also only emitted cold air, which caused the windshield to fog during use.[16]

These problems continued, and in January 2017 the Mooradians took their Jeep to an authorized dealer to repair the Jeep's heater. The Jeep had 33,000 miles at the time they took it to a dealer for repairs. The dealer told the Mooradians that they found a "sludge-like residue" in the radiator and oil cooler, which caused their vehicle's problems.[17]

To repair this, the dealer replaced the radiator, oil cooler, and heater core at a cost of $2,600. Neither of the Jeep's warranties covered this cost. After some negotiation, the Mooradians agreed to pay $300 for the repairs, and Jeep or the dealer covered the remaining $2,300.[18]

During this repair, the dealer did not fix any engine parts, including the engine's cylinder heads. The Mooradians have not alleged that their Jeep has had additional issues. They do, however, "fear that the component parts that were replaced are being damaged again."[19]

---

[13] Doc. 30-1 at 5.
[14] *Id.*
[15] Doc. 18 at 9.
[16] *Id.*
[17] *Id.*
[18] *Id.*
[19] *Id.* at 10.

**C. Plaintiff White**

Plaintiff White purchased a new 2013 Jeep Wrangler Unlimited from an authorized dealer in 2013. In June 2015, White's air conditioning did not emit sufficient air from the Jeep's vents.[20]

When White took his Jeep for repair, the dealership solved the problem by flashing his air conditioning control head. The same problem arose in July 2016, and the dealer fixed the problem by replacing the blower motor in Plaintiff White's Jeep.[21]

\*\*\*

Plaintiffs allege that Defendant has breached its express and implied warranties by refusing to repair the defective cylinder heads, that Defendant was negligent in producing the cylinder heads, and that Defendant violated the Ohio Consumer Sales Practices Act (OCSPA).[22] Plaintiffs seek to certify a class of all model year 2012-2017 Jeep Wrangler owners in the United States, as well as a subclass of Wrangler owners in Ohio.[23]

## II. Legal Standard

An action may be dismissed under Federal Rule of Civil Procedure 12(b)(6) if it fails to state a claim upon which a court can grant relief.[24] To survive a Rule 12(b)(6) dismissal, the complaint "must present 'enough facts to state claim to relief that is plausible on its face'" when its factual allegations are presumed true and reasonable inferences are made in favor of the non-moving party.[25]

---

[20] *Id.* at 10-11.
[21] *Id.*
[22] Ohio Rev. Code § 1345, *et seq*.
[23] Doc. 18 at 11.
[24] *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008).
[25] *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)).

Although federal pleading requirements do not require detailed factual allegations, "it is still necessary that the complaint contain more than bare assertions or legal conclusions."[26] The complaint must allege sufficient facts to give "the defendant fair notice of what the . . . claim is and the grounds upon which it rests" and that "raise a right to relief above the speculative level."[27]

### III. Analysis

Defendant FCA argues that, for a variety of reasons, all of Plaintiffs' claims must be dismissed. The Court addresses each claim in turn.

## A. Breach of Express Warranties

A claim for breach of express warranty under Ohio law requires a plaintiff to establish that: "(1) the item in question was subject to a warranty; (2) the item did not conform to the warranty; (3) the seller was given a reasonable opportunity to cure any defects; and (4) the seller failed to cure the defects within a reasonable period of time or after a reasonable number of attempts."[28]

For the reasons stated below, the Court **GRANTS** Defendant's motion to dismiss Plaintiff's breach of express warranty claim for failure to state a claim.

*1. Basic Limited and Powertrain Limited Warranties*

Plaintiffs allege that FCA breached its express warranties covering their Jeep Wranglers by failing to repair the defective cylinder heads.[29] FCA provides two potentially relevant express

---

[26] *Id.* at 434.
[27] *Twombly*, 550 U.S. 544 at 555.
[28] *Galoski v. Stanley Black & Decker, Inc.*, 2015 WL 5093443, at *4 (N.D. Ohio Aug. 28, 2015) (citing *Temple v. Fleetwood Enters., Inc.*, 133 F. App'x 254, 268 (6th Cir. 2005)).
[29] Doc. 18 at 15-16.

warranties, a 3 year/36,000 mile "Basic Limited Warranty" and a longer 5 year/100,000 mile "Powertrain Limited Warranty."

The Basic Limited Warranty "covers the cost of all parts and labor needed to repair any item" on the vehicle except "tires and Unwired [sic] headphones."[30] The Powertrain Limited Warranty "covers the cost of all parts and labor needed to repair" a limited number of parts, including the cylinder head assemblies within the engine.[31]

Defendant FCA argues that neither warranty covers Plaintiffs' claims. Defendant argues that none of Plaintiffs' vehicles required repair within either the time or mileage limit for the Basic Limited Warranty. Additionally, none of the repairs to Plaintiffs' vehicles involved any of the parts expressly enumerated in the Powertrain Limited Warranty.

Regarding these two arguments, FCA misunderstands Plaintiffs' claims. Plaintiffs claim that the cylinder head, which is expressly covered by the longer Powertrain Limited Warranty, is defectively manufactured. The defect in that cylinder head then is argued to cause numerous other problems with the vehicle's heating and cooling systems. As such, Plaintiffs claim that a repair that looks only at the heating or cooling system problem is akin to putting duct tape over a broken window; fine for a day, but nothing remotely resembling an adequate permanent solution.

FCA does not argue that the allegedly defective cylinder head was not covered by the longer Powertrain Limited Warranty when they sought repairs, or that the warranty has otherwise expired. Because Plaintiffs have alleged that Defendant FCA failed to repair a part covered by the still-in-effect Powertrain Limited Warranty, these arguments cannot defeat Plaintiffs' express warranty claim.

---

[30] Doc. 30-1 at 5.
[31] *Id.*

*2. Opportunity and Failure to Cure*

In order to state a claim for breach of warranty, Plaintiffs must have given Defendant FCA a reasonable opportunity to cure any defects, and Defendant must have failed to cure these defects.[32] The Mooradians took their vehicle in for one repair allegedly related to the manufacturing defect. White received two such repairs.[33] Apparently, both repairs worked. The Mooradians and White do not allege similar repair needs.

Plaintiffs do not adequately allege that Defendant FCA has had sufficient opportunity to cure. For both the Mooradians and for White, the repairs seem to have fixed the problem. The Mooradians claim that after several months of poor vehicle heating, their Jeep was fixed in January 2017. They do not allege any later problems or expense.

With regard to Plaintiff White, he alleges off-and-on air conditioning problems in 2015 and 2016. He then alleges that in July 2016 and after 64,151 miles, he needed to replace the air conditioning blower motor.[34] He does not explain how the air conditioning blower motor replacement relates to any sand in the cylinder heads, and he does not allege that anyone told him that he had sand or sludge in his radiator. White does not allege any later problems or expenses.

A defendant must be given at least two opportunities to cure a defect.[35] For that reason alone, the Mooradians' claim plainly fails. They have only received one repair, and that repair returned their car to working order for a substantial period of time, if not permanently.[36]

Plaintiff White received two repairs related to the alleged defect. Plaintiff White's claim also fails, as "two repairs of the same item is not unreasonable pursuant to either a breach of

---

[32] *See Temple*, 133 F. App'x at 268.
[33] Although Plaintiff White took his vehicle into the dealer for three repairs, during one of those trips the dealer was unable to replicate the alleged problem and performed no repair. *See* Doc. 18 at 11.
[34] *Id.*
[35] *See Temple*, 133 F. App'x at 269.
[36] *See* Doc. 18 at 9-10

warranty claim or the Magnuson-Moss Act."[37] Additionally, Plaintiff White alleges no facts

suggesting that his air conditioning problems were actually caused by the manufacturing defect,

*i.e.* finding a sludge build-up, instead of the problems the dealer diagnosed and fixed.

Besides this numerical deficiency, Plaintiffs' claim suffers from a more fundamental

issue. No Plaintiff alleges that he took his vehicle to Defendant or its dealers complaining of the

defective cylinder head and that Defendant refused the repair.

Instead, Plaintiffs sought and received repairs for heating and air conditioning problems.

Plaintiffs argue that even though the repairs they received solved their air conditioning- or heat-

related issues temporarily, Defendant failed to remedy their claimed underlying sand problem.

Although neither plaintiff alleges any additional problems, they argue issues will recur.

These vague allegations might sustain a breach of warranty claim in some scenarios. It

cannot sustain this allegation, however, for three reasons.

First, the allegedly defective vehicles only required one or two repairs to return to full

working order for a substantial length of time. Second, and relatedly, no Plaintiff actually

received the same repair more than once. The Mooradians only ever received one repair, and

Plaintiff White had his air conditioning control head unit flashed once, and his blower motor

replaced once.[38]

Finally, Plaintiffs do not allege that their vehicles currently exhibit any symptoms after

their most recent repair.[39] Indeed, no Plaintiff has a history of needing repeated repairs to the

allegedly affected components.

---

[37] *Temple*, 133 F. App'x at 269.

[38] Doc. 18 at 11.

[39] *See Temple*, 133 F. App'x at 269 ("[A]ssuming that the Temples met their burden by demonstrating that
the defects were subject to a warranty and that they gave a reasonable amount of time to the warrantors
for repair, this Court can affirm the district court's grant of summary judgment to Cummins because the

Case No. 1:17-cv-1132
Gwin, J.

As such, Plaintiffs have not given Defendant sufficient opportunity to cure.

**B. Failure of Essential Purpose, Unconscionability, and Pre-Suit Notice**

Even if Defendant has not explicitly breached its express warranties, Plaintiff claims that those warranties have failed their essential purposes or are unconscionable. For the following reasons, the Court disagrees.

*1. Failure of the Warranties' Essential Purpose*

Plaintiffs argue that Defendant FCA's express warranties have failed their essential purpose because the alleged manufacturing defect continues to manifest after they have taken their vehicles in for repairs. Plaintiffs' argument fails.

When a warranty limits a plaintiff to a repair or replace remedy, that warranty fails its essential purpose when the warranted product remains defective even after numerous attempts at repair.[40]

As explained above, no Plaintiff complained about the sand in the cylinder head manufacturing defect. Plaintiffs took their vehicles in for one or two repairs regarding alleged symptoms of the manufacturing defect, and Defendant fixed those symptoms.

No Plaintiff alleges that any symptoms of the alleged defect have recurred since the most recent repair. This minimal number of potentially successful repairs after several years of use is a far cry from the vehicles "riddled with defects" that have caused courts to find the repair and replace remedy inadequate.[41]

---

Temples failed to offer any evidence that the defects complained of to Cummins (the engine defects) continued to exist.").
[40] *Goddard v. Gen. Motors Corp.*, 396 N.E.2d 761, 765 (Ohio 1979).
[41] *See, e.g.*, *id.* at 762-63 (detailing "numerous mechanical problems" within ten months of delivery, including four repairs to the vehicle's transmission, a replaced starter, and a failed fuel pump).

As such, neither the Basic Limited nor Powertrain Limited Warranties has failed its essential purpose. Plaintiffs' minimal repair history does not suggest a failure of these warranties' essential purposes. Indeed, any repairs to parts covered under the Basic Limited Warranty occurred after the 3 year/36,000 mile limitation on that warranty,[42] and Plaintiffs have not sought a repair explicitly under the Powertrain Limited Warranty.

*2. Unconscionability*

Plaintiffs argue that the time limits on Defendant's warranties are unconscionable. Plaintiffs allege that Defendant FCA knew that the manufacturing defect would only become apparent to a consumer near or after the end of the express warranties, and Defendant FCA made false or misleading representations to hide the existence of the defect.

In Ohio, "[a] warranty disclaimer that leaves a party with a defective product and no avenue for recourse against the manufacturer is unconscionable. However, a warranty in which the party disclaiming warranties or remedies assumes some form of responsibility for the performance or maintenance of the product in issue is not unconscionable."[43]

Each of the two warranties involved with this case provides a responsibility to repair or replace the covered parts for years or tens of thousands of miles. Additionally, although the manufacturing defect may only manifest after the expiration of the Basic Limited Warranty, each Plaintiff had years and tens of thousands of miles remaining under the longer Powertrain Limited Warranty at the time of their repairs.

---

[42] *See Huffman v. Electrolux Home Products, Inc.*, 2013 WL 5591939, at *2 (N.D. Ohio Sept. 30, 2013) ("Because the warranty had already expired by the time the washing machine failed, plaintiff faces an insurmountable bar moving forward with her express warranty claim.").

[43] *Zaremba v. Marvin Lumber and Cedar Co.*, 458 F. Supp. 2d 545, 549 (N.D. Ohio 2006) (citing *Westfield Ins. Co. v. HULS Am., Inc.*, 714 N.E.2d 934, 949 (Ohio Ct. App. 1998)).

Finally, Plaintiffs' allegations of false and misleading statements made by Defendant do not meet the plausibility standard required to adequately state a claim. Plaintiffs summarily state that these statements occurred.[44] They do not, however, allege any facts about the substance of these statements; who made the statements; or when, where, and in what medium Defendant made these statements. This type of conclusory allegation cannot defeat a motion to dismiss for failure to state a claim.[45]

For these reasons, Defendant's warranties are not unconscionable.[46]

*3. Pre-Suit Notice*

Because the Court dismisses Plaintiffs' breach of express warranty claim on other grounds, whether Plaintiff properly provided the required pre-suit notice is immaterial.[47]

**B. Breach of Implied Warranties**

*1. Whether Defendant Pled Implied Warranty Claims in Contract and Tort*

Under Ohio law, a litigant can sustain a breach of implied warranty claim either in contract or in tort. A claim for breach of implied warranty in contract needs privity between the parties,[48] while a breach of implied warranty in tort does not.[49] Plaintiffs argue that, even if they lack privity with Defendant, their implied warranty claim can survive in tort.[50]

Plaintiffs' complaint does not explicitly state whether they seek a theory of implied warranty in contract, tort, or both. Plaintiffs do specifically refer to the warranty of

---

[44] *See* Doc. 18 at 15-16, 19.
[45] *Total Benefits Planning Agency, Inc.*, 552 F.3d at 434.
[46] Additionally, Plaintiffs do not address Defendant's arguments regarding conscionability in the express warranty context. Their failure to address Defendant's arguments waives any objections they may have to those arguments. *See Hicks v. Concorde Career Coll.*, 449 F. App'x 484, 487 (6th Cir. 2011).
[47] *See* Ohio Rev. Code § 1302.65(C)(1) ("[T]he buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy.").
[48] *See Curl v. Volkswagen of Am., Inc.*, 871 N.E.2d 1141, 1148 (Ohio 2007).
[49] *See In re Porsche Cars North America, Inc.*, 880 F. Supp. 2d 801, 865 (S.D. Ohio 2012).
[50] Doc. 32 at 8-9.

merchantability, which sounds in contract.[51] Plaintiffs allege that they have contract privity with

Defendant, or that they are third-party beneficiaries to Defendant's contracts with its dealers.[52]

Both allegations are only relevant to contractual implied warranty claims.[53]

Plaintiffs also, however, state that Defendant warranted that their vehicles were "fit for

their ordinary purpose."[54]  This language relates to the test establishing a breach of implied

warranty in tort.[55]  Given that courts must "construe the complaint in the light most favorable to

the plaintiff" on a motion to dismiss for failure to state a claim,[56] the Court analyzes Plaintiff's

complaint as stating claims for both breach of implied warranty in contract and tort.

*2. Substance of Implied Warranty Claims*

In order to state a claim for a breach of implied warranty in tort, Plaintiffs "must allege

that (1) a defect existed in a defendant's product that made it unfit for its ordinary, intended use;

(2) the defect existed at the time the product left the defendant's possession; and (3) the defect

was the proximate cause of the plaintiff's injuries."[57]

Similarly, a seller breaches the contract-based implied warranty of merchantability "when

the goods are not of the quality comparable to that generally acceptable in the trade for goods of

the kind involved."[58] In the consumer vehicle context, this means that Plaintiffs must adequately

allege that their vehicles are "not fit for safe driving and reliable transportation."[59]

---

[51] *See In re Porsche*, 880 F. Supp. 2d at 865 ("Purchasers that are in privity with the seller may pursue a claim for breach of implied warranty of merchantability under the UCC.").
[52] Doc. 18 at 17-18.
[53] *See Allen v. Anderson Windows, Inc.*, 913 F. Supp. 2d 490, 509 n.6 (S.D. Ohio 2012).
[54] Doc. 18 at 18.
[55] *See In re Porsche*, 880 F. Supp. 2d at 867 ("Plaintiffs bringing implied warranty in tort claims must allege that (1) a defect existed in a defendant's product that made it unfit for its ordinary, intended use.").
[56] *Ohio Police & Fire Pension Fund*, 700 F.3d at 835 (quoting *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)).
[57] *In re Porsche*, 880 F. Supp. 2d at 867 (citing *White v. DePuy, Inc.,* 129 Ohio App.3d 472, 480, 718 N.E.2d 450 (12th Dist.1998)).
[58] *Felger v. I–Deal Auto Sales,* 1997 WL 691450 (Ohio Ct. App. 1997).
[59] *Brown v. Cincyautos, Inc.*, 2009 WL 2913936, *5 (S.D. Ohio Sept. 8, 2009).

Defendant FCA argues that Plaintiffs' implied warranty claims fail because Plaintiffs' vehicles drove without issue for years and tens of thousands of miles. In Defendant's view these facts make Plaintiffs' vehicles merchantable and otherwise fit for their ordinary, intended use as a matter of law.[60]

The Court agrees. Plaintiffs' vehicles survived years of regular use before needing any repair related to the manufacturing defect. Plaintiffs then received either one or two repairs, which apparently solved any defect-related issue they experienced for at least six months, and possibly permanently.[61]

At least one Ohio court has found a vehicle merchantable as a matter of law when it suffered a potentially more dangerous issue after a similar time period of use as Plaintiffs' vehicles.[62] Additionally, when courts have declined to find a vehicle merchantable, the vehicle has required numerous repairs over a relatively short time-span,[63] or has suffered from a major safety defect.[64]

Plaintiffs' allegations of intermittent heating and air conditioning failure "while certainly an annoyance, did not interfere with [their] ability to drive [their] car[s]."[65] For this reason, Plaintiffs make no sufficient merchantability or fitness claim.

The Court therefore **GRANTS** Defendant's motion to dismiss Plaintiffs' implied warranty claims in both contract and tort.

---

[60] Doc. 35 at 8-9.
[61] *See* Doc. 32 at 8-9.
[62] *Reyant v. Daimler-Benz A.G. Aktiengesellschaft*, 1978 WL 215552, *3 (Ohio Ct. App. 1978) (finding vehicle merchantable as a matter of law when crankshaft broke after three years and 36,000 miles of use).
[63] *See, e.g.*, *Mason v. Mercedes-Benz USA, LLC*, 2005 WL 1995087, *5 (Ohio Ct. App. 2005) (finding that receiving twenty repairs in two years could make a vehicle unmerchantable).
[64] *See In re Porsche*, 880 F. Supp. 2d at 827-28 (alleging that the defective coolant tubes could cause engine failure while traveling at high speeds).
[65] *Filipovic v. Fairchild Chevrolet*, 2001 WL 1141384, *5 (Ohio Ct. App. 2001) (holding that repeated stalling did not make a vehicle unmerchantable).

**C. Violation of the Magnuson-Moss Warranty Act**

Recovery under the MMWA requires an underlying state law breach of warranty.[66] Because the Court dismisses Plaintiffs' express and implied breach of warranty claims, the Court also **GRANTS** Defendant's motion to dismiss Plaintiffs' MMWA claim.

**D. Negligence**

Defendant argues that Plaintiffs' negligence claim fails because Defendant had no duty to create a product with a certain amount of longevity, and because Plaintiff's only damages are for economic loss.

Defendant argues that "[t]here simply is no common-law duty requiring a manufacturer to produce products . . . that will have a set longevity."[67] This argument proves too much. Taken to its logical conclusion, Defendant's argument would totally eliminate negligence liability even for manufacturers that created a vehicle that only drove properly for days.

Defendant points to a possible solution to this logical flaw by suggesting that the length of the warranty serves as the end-point where the parties have contractually agreed to shift liability from the manufacturer to the consumer. By this theory, because Plaintiffs sought repairs to parts outside of the time or mileage limits of the Basic Limited Warranty, no negligence claim can succeed.

This argument, however, rests on a faulty assumption about Plaintiffs' complaint. Plaintiffs allege that repairs stemming from the manufacturing defect are covered both by the shorter Basic Limited Warranty, which expired by the time Plaintiffs' first sought repairs, and by the longer Powertrain Limited Warranty, which was still effective when Plaintiffs sought repairs.

---

[66] *See In re Porsche*, 880 F. Supp. 2d at 819 ("Courts have uniformly held that Congress intended the [Magnuson-Moss Warranty] Act's implied warranty provisions to be interpreted in accordance with the relevant state's law, except as expressly modified by the Act.").

[67] Doc. 30-1 at 16.

As such, Defendant's citations to cases where plaintiffs sought repairs after the express warranties ended are inapposite.[68]

Defendant's argument regarding the economic loss doctrine also fails. Courts applying Ohio law, including this Court, have allowed consumers to recover economic losses in negligence actions when they are not in privity of contract with a manufacturer.[69] Because, "in Ohio, vertical privity exists only between immediate links in the distribution chain," Plaintiffs are not in contract privity with Defendant.[70]

To counter this rule, the Defendant cites to cases that either deal with commercial buyers, whom Ohio law does not allow to obtain recovery for purely economic losses,[71] or involve strict liability instead of negligence.[72]

For these reasons, Plaintiffs' negligence claim survives, and the Court **DENIES** Defendant's motion to dismiss this claim.

**E. Violation of the Ohio Consumer Sales Practices Act**

Defendant argues that Plaintiffs' claims under the Ohio Consumer Sales Practices Act (OCSPA) must be dismissed as barred by the statute of limitations. Additionally, Defendants argue that Plaintiffs failed to satisfy the requirements for pleading fraud under Federal Rule of Procedure 9(b).

---

[68] *See*, *e.g.*, *Davisson v. Ford Motor Co.*, 2014 WL 4377792, at *7 (S.D. Ohio Sept. 3, 2014); *Buckeye Res., Inc. v. DuraTech Indus. Int'l, Inc.*, 2011 WL 5190787, at *5 (S.D. Ohio Oct. 31, 2011).
[69] *See In re Porsche*, 880 F. Supp. 2d at 871-72 (allowing an Ohio state law claim for negligence to proceed in spite of only claiming economic losses); *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 684 F. Supp. 2d 942, 951 (N.D. Ohio 2009) (Gwin, J.) (same).
[70] *Curl*, 871 N.E.2d at 1148.
[71] *See*, *e.g.*, *Chemtrol*, 537 N.E.2d at 631.
[72] *See*, *e.g.*, *Kuns v. Ford Motor Co.*, 926 F. Supp. 2d 976, 986-87 (N.D. Ohio 2013).

The OCSPA has a two-year statute of limitations.[73]  This statute of limitations is "absolute."[74]  When a plaintiff brings an OCSPA claim based on alleged misrepresentations about the "standard, quality, or grade" of a purchased consumer good, the statute of limitations begins to run from the time of purchase.[75]

All Plaintiffs bought their Wranglers in 2013.  As such, the statute of limitations for their OCSPA claims ran out in 2015.  Plaintiffs filed their complaint in 2017.  The statute of limitations bars their claims unless it is tolled for some reason.  In responding to their statute of limitations problem, the Plaintiffs argue for either discovery rule or equitable tolling.

The discovery rule tolls the statute of limitations until a defect is discovered.  Discovery rule tolling, however, is only available for OCSPA claims when a plaintiff seeks recission as a remedy.[76]  Plaintiffs seek both damages "and other relief under statutory or common law."[77]  The OCSPA specifically provides for recission as a form of OCSPA relief.[78]

Plaintiffs, however, have not sufficiently alleged that they were unable to discover the defect within the limitations period. Plaintiffs allege that "hundreds" of complaints regarding this issue are available on the internet.[79]

In part because of these complaints, Plaintiffs allege that Defendant FCA should have been aware of the defect's pervasiveness by June 2012.[80]  Indeed, one of the internet complaints included within Plaintiffs' complaint is dated January 1, 2015.[81]

---

[73] Ohio Rev. Code Ann. § 1345.10(C).
[74] *Siriano v. Goodman Mfg. Co.*, 2015 WL 12748033, at *16-17 (S.D. Ohio Aug. 18, 2015).
[75] *See In re Whirlpool Corp.*, 45 F. Supp. 3d at 710-11.
[76] *See Siriano*, 2015 WL 12748033, *16-17.
[77] Doc. 18 at 20.
[78] *See* Ohio Rev. Code Ann. § 1345.09.
[79] Doc. 18 at 2.
[80] *Id.*
[81] *See id.* at 6. The Court notes that Plaintiffs apparently redacted this date in their complaint, as it is clearly visible on the website hosting the original online complaint. *Compare* Car Complaints, *Heater Not Working, 2012 Jeep Wrangler*, Complaint 18 *available at*

At the latest then, Plaintiffs should have discovered the defect by then. The statute of limitations therefore ran out no later than January 1, 2017. Plaintiffs filed their complaint on May 31, 2017.[82] Discovery rule tolling does not save their OCSPA claim.

Plaintiffs are also not entitled to equitable tolling. When seeking to equitably toll a statute of limitations, Ohio courts require that "a plaintiff must show that the defendant misrepresented the length of the limitations period, promised a better settlement if the plaintiff did not bring suit, or made similar representations to induce a delay in bringing suit."[83] Plaintiffs' make no allegations that Defendant misrepresented the limitations period.

For these reasons, the Court **GRANTS** Defendant's motion to dismiss Plaintiffs' OCSPA claims as time-barred.

## F. Mooradians' Diminished Value Claim

Defendant also argues that because the Mooradians leased their vehicle, diminished value damages are not available.[84] Defendants, however, provide no citation suggesting that Ohio law does not recognize this type of damages claim.[85]

In fact, Ohio's Lemon Law recognizes that lessees could have a viable claim for the diminished value of their vehicle.[86] Although Plaintiffs do not bring a Lemon Law claim here, Ohio's recognition of a lessee's potential claim for diminished value in that context provides

---

http://www.carcomplaints.com/Jeep/Wrangler/2012/AC_heater/heater_not_working.shtml (last visited Oct. 2017) (link provided in Plaintiffs' Complaint, Doc. 18 at 6), *with* Doc. 18 at 6.

[82] *See* Doc. 1.

[83] *See Young v. Carrier Corp.*, 2014 WL 6617650, *6 (N.D. Ohio Nov. 21, 2014) (citing *Helman v. EPL Prolong, Inc.,* 139 Ohio App. 3d 231, 246, 743 N.E.2d 484 (2000)).

[84] Doc. 30-1 at 25.

[85] *Id.* (citing *Copelan v. Infinity Ins. Co.*, 192 F. Supp. 3d 1063, 1066 (C.D. Cal. 2016) (applying California state law) and *Thiedemann v. Mercedes-Benz USA, LLC*, 872 A.2d 783, 795-96 (N.J. 2005) (citing New Jersey state law)).

[86] *See Neeld v. American Isuzu Motors, Inc.*, 2004 WL 2715919, *5 (Ohio Ct. App. 2004) (citing Ohio Rev. Code §§ 1345.71(F)(2) and 1345.71(E)).

evidence that Ohio courts would also recognize a diminished value claim in the negligence and breach of warranty contexts.

For this reason, the Court **DENIES** Defendant's motion to dismiss the Mooradians' claim for diminished value.

### G. Class Claims

Defendant makes several arguments relating to the viability of Plaintiff's complaint as a class action.[87] These arguments are more appropriate for class certification proceedings, and so the Court declines to consider them in the context of a motion to dismiss for failure to state a claim.[88]

### IV. Conclusion

For the preceding reasons, the Court **GRANTS** Defendant's motion to dismiss Plaintiff's breach of express warranty, breach of implied warranty, Magnuson-Moss Warranty Act, and Ohio Consumer Sales Practices Act claims. The Court **DENIES** Defendant's motion to dismiss Plaintiff's negligence claims, diminished value claims, and class certification-based claims.

IT IS SO ORDERED.

Dated: October 27, 2017
s/_____ *James S. Gwin*_____
JAMES S. GWIN
UNITED STATES DISTRICT JUDGE

---

[87] *See* Doc. 30-1 at 19-20.
[88] *See Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc.*, 863 F.3d 460, 466 (6th Cir. 2017), *as corrected on denial of reh'g en banc* (Sept. 1, 2017) ("In the class action context, a district court is given substantial discretion in determining whether to certify a class, as it possesses the inherent power to manage and control its own pending litigation.").