UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
-------------------------------------------------------

| | | |
|---|---|---|
| DONNA MOORADIAN, ET AL. | : | CASE NO. 1:17-cv-1132 |
| Plaintiffs, | : | |
| vs. | : | OPINION & ORDER |
| | : | [Resolving Doc. No. 46] |
| FCA US, LLC, | : | |
| Defendant. | : | |

-------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Defendant FCA US, LLC ("FCA") requests that the Court sanction Plaintiff White and his counsel for spoliating evidence.[1] FCA manufactures Chrysler automobiles, including Jeep Wranglers. Plaintiffs oppose the sanction motion, arguing that no spoliation occurred.[2]

For the reasons stated below, the Court **GRANTS IN PART** Defendant's motion.

## I. Background

This is a case about sand. Specifically, in this case, the Plaintiffs allege that casting sand used in creating Jeep Wrangler engine parts seeps into those vehicles' radiators, causing heating and cooling issues.

Perhaps the most important piece of evidence in this case, then, is the fluid in a Wrangler's radiator. Plaintiffs allege casting sand settles in some Wrangler radiators causing a type of sludge. Plaintiff White and his attorneys' (mis)handling of that fluid is the reason for this Order.

On August 17, 2017, Defendant FCA sent written discovery requests to Plaintiff White. Among those requests, FCA asked White to "[w]ithin 90 days . . . [produce] YOUR VEHICLE

---

[1] *See* Doc. 46-1.
[2] Doc. 53. Plaintiff replies. Doc. 55.

Case No. 1:17-cv-1132
Gwin, J.

for a private inspection by FCA US at an FCA US authorized dealership chosen by YOU."[3] Plaintiff White responded that he would produce his vehicle for inspection as requested.[4]

Between FCA's request and Plaintiff White's response, however, Plaintiff White took his vehicle to an unaffiliated automobile service location at his counsel's behest.[5] White and White's attorney gave FCA's counsel no notice. On September 14, 2017, White took his vehicle to Finish Line Performance LLC ("Finish Line") and had the coolant in his radiator flushed.[6]

White did not take his Wrangler to Finish Line for any needed service to operate his vehicle.[7] White took his vehicle to Finish Line because his lawyers told him to.[8] Neither he nor his attorneys informed Defendant FCA that White was going to take his vehicle in for this work.

White requested that Finish Line record their work and that they save anything that came out of the radiator.[9] When White received his vehicle back from Finish Line, they also gave him two large, unlabeled, unsealed, half-filled jugs of liquid that Finish Line said came from his radiator flush.[10] That same day, they also sent him four videos through Facebook Messenger, purportedly of their servicing his vehicle.[11]

Neither White, his counsel, nor any representative of Defendant FCA observed the making of these videos. The videos show fluid being drained from a vehicle in an auto repair shop.[12] The fluid pours over part of that vehicle's underbody, through a dirty funnel, and into a

---

[3] Doc. 46-5 at 14 (capitalization in original).
[4] *Id.*
[5] Doc. 53 at 6.
[6] *Id.*
[7] *See id.* at 6-7.
[8] *Id.*
[9] *Id.* at 6.
[10] Doc. 46-2 at 16-17.
[11] *Id.* at 9.
[12] Defendant FCA provided these videos to the Court as Exhibit E attached to their motion. *See* Doc. 46-6.

Case No. 1:17-cv-1132
Gwin, J.

container. In another video, liquid from one container is poured into what appears to be one of the jugs White now possesses. The workstation and shop are dirty in predictable ways.

Finish Line seemingly shot these videos on a cell phone, and so they are of relatively low quality. There are no wide shots in the videos. Instead, the videos are all shot in various degrees of close-up. Because of this, neither the people in the videos nor the vehicle they are working on is readily identifiable. Additionally, none of the four videos are time stamped, and they do not show an obviously continuous sequence. There is no indication of a precise order of events or a description of what happens when the camera is off.

Because of these flaws, it is difficult, if not impossible, to tell whether these videos show what Plaintiff White and his counsel says that they show.

What may be even more concerning, however, is what White says happened after he picked up his vehicle and the jugs of liquid from Finish Line. White says that he took the unlabeled and unsealed jugs, purportedly containing the casting-sand filled liquid drained from his radiator, and sat them in his car during his twelve-hour shift at work.[13] When White got off work, he put the jugs in the breezeway at his mother's house.[14] He left them there, seemingly unattended, for about three weeks, until he picked them up and brought them to his deposition.[15]

## II. Legal Standard

"District courts have broad discretion to craft proper sanctions for the spoliation of evidence."[16] When a party seeks sanctions for its opponent's spoliation of evidence, that party must show: "'(1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the [evidence] was destroyed with a culpable state of mind;

---

[13] Doc. 46-2 at 30-31.
[14] *Id.*
[15] *Id.*
[16] *Adkins v. Wolaver*, 692 F.3d 499, 503 (6th Cir. 2012).

-3-

Case No. 1:17-cv-1132
Gwin, J.

and (3) that the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense.'"[17] "The culpable state of mind factor is satisfied by a showing that the evidence was destroyed knowingly, even if without intent to breach a duty to preserve it, or negligently."[18]

A proper sanction for spoliation of evidence "serve[s] both fairness and punitive functions."[19] It both levels the evidentiary playing field and punishes the spoliating party by ensuring that they suffer any risk of an erroneous judgment.[20]

### III. Discussion

**A. Requirements for Sanctions**

As an initial matter, Plaintiff White is wrong with his contention that spoliation sanctions are based on state and not federal law. The Sixth Circuit has held that "the authority to impose sanctions for spoliated evidence arises not from substantive law but, rather, 'from a court's inherent power to control the judicial process.'"[21] Because of this, federal law applies to crafting spoliation sanctions.[22]

Plaintiff White's and his attorneys' actions satisfy each requirement for a spoliation sanction. Plaintiff White, alone, controlled this evidence.[23] The work was done on his vehicle, and he is the sole owner of that vehicle.[24] Further, Plaintiff White and his attorneys admit that they had a duty to preserve this evidence.[25]

---

[17] *Crown Battery Mfg. Co. v. Club Car, Inc.*, 185 F. Supp. 3d 987, 995 (N.D. Ohio 2016) (quoting *Beaven v. U.S. Dep't of Justice*, 622 F.3d 540, 553 (6th Cir. 2010)).
[18] *Id.* at 999 (quoting *Beaven*, 622 F.3d at 554).
[19] *Adkins v. Wolaver*, 554 F.3d 650, 652 (6th Cir. 2009).
[20] *Id.*
[21] *Id.* (quoting *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001)).
[22] *Id.*
[23] *See* Doc. 18 at 10-11.
[24] *See id.*
[25] Doc. 53 at 12.

Case No. 1:17-cv-1132
Gwin, J.

Plaintiff White and his counsel admit that they had a culpable state of mind. While Plaintiff White testified that his attorneys were aware of his plan to get his car worked on,[26] Plaintiff's opposition to FCA's sanctions motion actually clarifies that statement. In fact, White's counsel *told him* to have this work done on his vehicle.[27] These actions were clearly taken knowingly.[28]

Finally, Plaintiff White does not contend that the evidence at issue here is not "relevant to the party's claim or defense."[29] Indeed, it would be foolish to do so, as the build-up of casting sand in the liquid purportedly drained from White's vehicle is at the very core of his allegations. Further, they admit that they had Finish Line perform this work in furtherance of their own discovery.[30]

**B. Plaintiff White's Arguments against Sanctions**

Plaintiff White contends, however, that there is no spoliation because he and his counsel found FCA's request for a private inspection ambiguous, because FCA also extracted fluid from Plaintiff Mooradian's radiator, and because they did not "destroy" or "alter" evidence. None of these arguments passes muster.

First, FCA clearly requested to inspect Plaintiff White's vehicle. Whether they requested a private inspection, a joint inspection, or an inspection pursuant to Federal Rule of Civil Procedure 34(a)(2) is immaterial. Plaintiff White and his attorneys knew that FCA wanted to inspect White's vehicle, and therefore knew that they had a duty not to do anything to that vehicle that would or could materially alter it.

---

[26] Doc. 46-2 at 4.
[27] Doc. 53 at 6 ("Plaintiff's counsel instructed Plaintiff to have his vehicle tested for sludge but to carefully videotape and preserve the sludge for testing.").
[28] *See Crown Battery*, 185 F. Supp. 3d at 999.
[29] *Id.* at 995.
[30] *See* Doc. 53 at 6.

Case No. 1:17-cv-1132
Gwin, J.

Second, comparing FCA's extraction of fluid from Plaintiff Mooradian's vehicle to what happened here is absurd. In contrast to the slapdash process described above, FCA "pull[ed] the coolant from the top of the radiator with a sterile syringe, and it then preserved the extracted sample by putting it into a sterile, composite-proper bottle."[31] Additionally, FCA's extraction occurred *in the presence* of White's counsel.[32] At Plaintiffs' insistence, FCA also used this same extraction procedure to obtain a sample for Plaintiffs.[33]

Finally, and most importantly, Plaintiff White and his counsel have plainly destroyed, or at a minimum, materially altered, this important evidence. Assuming that the videos provided by White are of his vehicle, White and his counsel have almost certainly contaminated any sample they might now have. They have also created significant questions about this sample's chain of custody. Relatedly, White and his counsel have introduced the not insignificant possibility that White's vehicle is not the one shown in these videos and that the liquid in the jugs White currently possesses did not actually come from his vehicle. Plaintiff White's contention that these samples can still be tested does nothing to alleviate these concerns.

**C. Sanctions against Plaintiff White**

Ultimately, the Court cannot tell whether what happened here was a product of maliciousness or simply incompetence. On the one hand, Plaintiff White's attorneys directed him to materially alter highly relevant evidence after Defendant FCA said it wanted to inspect that evidence, but before FCA actually had a chance to perform an inspection. This is plainly sanctionable conduct.

---

[31] Doc. 55 at 2-3.
[32] *Id.*
[33] *Id.* at 3.

-6-

Case No. 1:17-cv-1132
Gwin, J.

On the other hand, Plaintiff White and his attorneys have not shown any obvious intent to deceive Defendant FCA or this Court. Plaintiff White and his attorneys ostensibly requested that the Finish Line mechanics record all of their work, and provided those videos to FCA prior to White's deposition. Plaintiff White's attorneys have also been forthcoming about their role in these events.

Regardless of White and his counsel's underlying motivations, they plainly knowingly acted at a time when they knew that they had a duty to preserve this evidence. The Court will sanction them by prohibiting Plaintiffs from supporting their motion for class certification with any evidence stemming from the liquids drained from White's vehicle, or any other work done on White's vehicle during his September 2017 trip to Finish Line. Plaintiffs also may not present any of this evidence in their dispositive briefing or at trial.

Additionally, because of the uncontroverted events described in this opinion, the Court disqualifies White from serving as a class representative.[34] His actions have made him an atypical member of the class by giving FCA numerous possible defenses against him that would not apply to the class as a whole.[35] The Court, however, does not at this time decide whether White could later participate as a class member if a class action is later approved.

FCA has also requested that the Court disqualify White's counsel from serving as class counsel. The Court declines to take that step at this time. If FCA wishes to present evidence

---

[34] Any attempts by Plaintiff's counsel to substitute a different class representative are more appropriately handled at the class certification phase.

[35] *See Falcon v. Philips Electronics North Am. Corp.*, 304 F. App'x 896, 897 (2d Cir. 2008) ("When a putative class representative is subject to unique defenses which threaten to become the focus of the litigation, she cannot serve as a class representative." (internal quotation omitted)); *Doyle v. Chrysler Group LLC*, 2014 WL 7690155, at *2-3 (C.D. Cal. Oct. 9, 2014) ("[U]nlike other class members, [Plaintiff] would also be required to overcome any adverse inference a jury might draw as a result of her sale of the vehicle. Thus, as a result of the adverse inference evidentiary sanction, her claim is atypical and she is an inadequate class representative."), *overruled on other grounds*, *Doyle v. Chrysler Group, LLC*, 663 F. App'x 576 (9th Cir. 2016).

Case No. 1:17-cv-1132
Gwin, J.

from this or any other incident that it believes relates to the suitability of class counsel, the Court will consider those arguments when deciding class certification.

### IV. Conclusion

For the preceding reasons, the Court **GRANTS IN PART** Defendant's motion for sanctions for spoliation of evidence. The Court **PROHIBITS** Plaintiffs from using any evidence obtained from the events described in this opinion in their motions for class certification, dispositive motions, or at trial. The Court **DISQUALIFIES** Plaintiff White from serving as a class representative.

IT IS SO ORDERED.

Dated: December 14, 2017              s/         *James S. Gwin*           
                                      JAMES S. GWIN
                                      UNITED STATES DISTRICT JUDGE